IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

**JOE L. FERNANDEZ and DIANA FERNANEZ**,

      Plaintiffs,

v.                                                                                              No. CIV 10-860 BB/RHS

**SAFECO INSURANCE COMPANY OF AMERICA,**

      Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court for consideration of a motion for partial summary judgment [Doc. 21] filed by Defendant. Having considered the submissions of the parties and the applicable law, the Court will grant the motion.

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the non-moving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587. The Court will address Defendant's motion with this standard in mind.

**Relevant Facts and Preliminary Discussion**

This case involves the issue of "stacking" automobile insurance coverage known as under-insured or uninsured motorists coverage ("UM/UIM coverage"). The issue of stacking arises when an insured person owns more than one vehicle, and purchases an automobile-insurance policy covering more than one of the owned vehicles. UM/UIM coverage is not specific to a single vehicle, but follows the insured. *See Vigil v. California Cas. Ins. Co.*, 811 P.2d 565, 568 (N.M. 1991). Therefore, when an insured with a multi-vehicle policy is involved in an accident with an uninsured or under-insured driver, courts have been confronted with the issue of whether, in effect, the insured has purchased a UM/UIM policy for each owned vehicle. *See Rodriguez v. Windsor Ins. Co.*, 879 P.2d 759, 761 (N.M. 1994). If so, or if the policy is ambiguous as to whether this is so, the insured will be allowed to add together, or stack, the limits of UM/UIM coverage. *See id.* For example, if the UM/UIM limits of a policy are $25,000, the insured has covered three vehicles under the policy, and the insured is in an accident with an uninsured driver, the concept of stacking would allow the insured to recover $75,000 from the insurance company rather than only $25,000.

In this case, Plaintiffs were passengers in a vehicle driven by their daughter, which was struck by an under-insured driver. Plaintiffs were insured by Defendant and their policy provided UM/UIM coverage for bodily injury, with limits of $25,000 per person and $50,000 per occurrence. The policy covers three different vehicles, and Plaintiffs wish to stack the UM/UIM coverage for the three vehicles to make the total limit $150,000 rather than $50,000. Defendant has moved for summary judgment, arguing that as a matter of law stacking is not allowed under the clear language of the policy purchased by Plaintiffs.

**Analysis**

Neither side has presented any evidence that would tend to supplement or contradict the terms of the insurance policy and the supporting documents. The Court's review is therefore based primarily, if not solely, on the structure and language of the submitted documents. As Defendant

points out, Judge Vasquez of this District has previously reviewed a virtually identical policy issued by Defendant, and found that it unambiguously precluded stacking. *See Safeco Ins. Co. of America v. Alarid*, No. CIV-05-1216, Doc. 34 (D. N.M. 2007, unpublished opinion). Of course, this Court is not bound by a decision of a different district judge, even from the same district. *See, e.g., Willner v. Budig,* 848 F.2d 1032, 1035 (10th Cir. 1988). However, there is an important judicial interest in consistency of rulings on identical issues, so that results of cases should not ordinarily depend on the judge to whom the case has been assigned. *See, e.g., Bankers Life and Cas. Co. v. United States*, 142 F.3d 973, 982 (7th Cir. 1998) ("[C]onsistency in the law forms the backbone of effective jurisprudence."). Therefore, while the Court will not automatically adopt the analysis engaged in by Judge Vasquez, that analysis should be recognized as possessing a certain degree of persuasive effect.

The parties agree that stacking jurisprudence in New Mexico has changed significantly since they entered into the contract giving rise to the policy at issue in this case. They also agree that the controlling law is that stated in *Rodriguez, supra*, 879 P.2d at 759, which was the law in effect at the time of contracting. Under *Rodriguez*, a truly unambiguous anti-stacking clause may be given effect under the following conditions: first, only one premium has in fact been charged for UM/UIM coverage, no matter how many vehicles are insured by the policy; second, the insurer plainly notifies the insured, in the initial contracting documents, that only one premium is being charged for UM/UIM coverage, that stacking of UM/UIM coverage will not be permitted, and that the insured should bear this in mind when deciding what amount of UM/UIM coverage to purchase. *See id.*, 879 P.2d at 765; *see also Montaño v. Allstate Indem. Co.*, 92 P.3d 1255, 1262 (N.M. 2004) (applying test set out in *Rodriguez*). It is necessary, therefore, to address these requirements to determine whether stacking should be allowed here.

There is however one preliminary issue to be resolved before the merits of the case can be discussed. Attached as an exhibit to Defendant's opening brief is a document entitled

3

"IMPORTANT NOTICE ABOUT UNINSURED/UNDERINSURED MOTORISTS COVERAGE". [Doc. 21, Exh. B]  Plaintiffs argue that the contents of this document cannot be considered in applying the *Rodriguez* test, because the document is not part of the policy and was merely a "mailer" sent to Plaintiffs.  As evidence of this, Plaintiffs point to letters from Defendant, which do characterize the document as a "mailer." [Doc. 25, Exhs. 1, 2]  However, there is no evidence that the mailer was either sent to Plaintiffs or received by them at a different time than the rest of the insuring documents.  If the mailer was included in the initial policy materials received by Plaintiffs, that is quite a different matter than if it was a separately-mailed document that arrived subsequently.  There is evidence supporting the first scenario, as follows:  (1) Defendant electronically submitted a small stack of documents consisting of a copy of the policy and endorsements thereto, which includes the UM/UIM notice; the stack contains, in order, letters concerning changes to the policy (usually substituting different vehicles for certain of the original covered vehicles), new declarations pages reflecting the changes, then a privacy notice, then the notice concerning UM/UIM coverage, then the original declarations pages, and then the policy itself; and (2) the UM/UIM notice contains a statement indicating that "[y]our agent's phone number is shown on **the enclosed Declarations page."** [Doc. 5, Exh. 1 (emphasis added)].  This evidence indicates the notice in question was included in the original packet sent to Plaintiffs, which included the policy, declarations pages, UM/UIM notice, and privacy notice. At minimum, the UM/UIM notice was sent in the same envelope as the declarations page.  As noted, there is no evidence supporting a theory that the UM/UIM notice was mailed separately.  Given this absence of contrary evidence, even on summary judgment the Court must find that the UM/UIM notice was not mailed separately to Plaintiffs, but was included with other insuring documents such as the declarations page.

Plaintiffs also argue the notice was not part of the insurance policy itself, and thus cannot be considered.  They point out that at the bottom of the declarations page there is a list of policy forms applicable to the policy, and this list does not include the form number for the UM/UIM

notice. [Doc. 25, Exh. 3] This argument is both hyper-technical and unpersuasive. If a notice is included with insurance documents sent to an insured, and is on a page separate from the official policy, that makes the notice more conspicuous, not less; an insured is more likely to review and pay attention to the contents of a separate notice than a notice buried inside the policy. Accepting this argument would not serve the purposes of the *Rodriguez* requirements, which are intended to ensure that an insured be adequately notified about stacking and whether it is allowed under the policy. In other words, a notice such as this does not need to be specifically incorporated into an insurance policy to be effective for purposes of *Rodriguez*.

Plaintiffs' final argument concerning the UM/UIM notice is that it was not included as part of the insurance agent's original proposal to Plaintiffs, and therefore came too late to be considered adequate notice. However, New Mexico courts have never required or intimated any requirement that potential insurance purchasers receive *Rodriguez*-mandated information prior to entering into an insurance contract. All of the cases analyzing issues concerning UM/UIM insurance, stacking, payment of single or multiple premiums, and ambiguity of insurance contracts, have reviewed the actual insurance documents themselves, not any pre-contractual negotiating instruments such as the agent's proposal in this case. *See, e.g., Montaño, supra*, 92 P.3d at 1262 (reviewing insurance contract and amendatory endorsement); *Rodriguez*, *supra*, 879 P.2d at 760 (reviewing policy consisting of a declarations page, the printed policy, an uninsured motorist endorsement, and other miscellaneous endorsements). What is required by the case law is unambiguous notice to insurance purchasers, provided in the insuring documents themselves, that only one premium has been charged for UM/UIM coverage and that stacking of such coverage is not allowed. This will allow the purchasers to decide whether the UM/UIM coverage they have purchased is sufficient, and to increase the limits if they are willing to pay the necessary higher premiums. *See Rodriguez,* 879 P.2d at 765 (insured needs to be able to make an informed decision whether to purchase the policy and stay with that insurance company, or choose another).

In sum, the Court will consider the contents of the UM/UIM notice, as well as the policy documents, in analyzing the *Rodriguez* factors with respect to Plaintiffs' insurance policy. This brings us to the first of those factors – whether, as a matter of fact, Defendant actually charged more than one premium for UM/UIM coverage. Where that is the case, even an unambiguous notice that stacking will not be allowed is not legally effective; despite the notice, stacking of coverage will be mandated by the courts. *See Montaño*, *supra*, 92 P.3d at 1261. This is so because an insured should receive the coverage he or she has paid for. *Id.* In this case, however, there is no suggestion that Plaintiffs actually paid more than one premium for their UM/UIM coverage. On summary judgment the Court accepts that only one premium was charged and collected for that coverage.

The remaining *Rodriguez* factors concern not the factual issue of the number of payments, but the issue of ambiguity of the insuring documents. As noted above, to pass muster under *Rodriguez* an insurer must adequately notify the insured of three things. The first of these is the fact that only one premium has been charged for the UM/UIM bodily-injury coverage; the policy and supporting documents must "plainly notify" the insured that only one premium has been charged for UM/UIM bodily-injury coverage. *See Rodriguez*, 879 P.2d at 765. The notification in Plaintiffs' policy is contained in the declarations pages. These pages separate Plaintiffs' coverage by vehicle, listing individual items of coverage under each vehicle – the 2003 Mitsubishi Galant, the 1985 Chevrolet Blazer, and the 1983 Chevrolet C10. [Doc. 21, Exh. A] The items listed include coverage such as liability for bodily injury, liability for property damage, UM/UIM coverage for property damage, comprehensive coverage, and collision coverage. A separate premium is listed for each of these coverages, unless that particular vehicle does not carry a specific type of coverage. For example, no premium is listed for the 1985 Chevrolet Blazer for comprehensive or collision coverage, meaning Plaintiffs elected not to purchase such coverage for this older-model vehicle.

Significantly, UM/UIM coverage for bodily injury is not listed under any of the vehicles. Instead, it first appears on the second page of the declarations, after the breakouts of coverage for

each vehicle. At this location there is a column totaling the coverages purchased by Plaintiffs. The item for UM/UIM bodily-injury coverage appears at the top of the column, as a separate item with a premium of $61.10; underneath this item in the column are the total premiums for each vehicle: $408.40 for the Mitsubishi, $137.20 for the 1985 Chevrolet, and $137.20 for the 1983 Chevrolet. The four items in the column, including the UM/UIM item, are then totaled as $743.90 on a line containing the total premium for all vehicles. Thus, the premium for UM/UIM bodily-injury coverage is presented as a separate item, not connected to any single vehicle, and no line item for such coverage is listed in the break-out specification of coverage for each different vehicle.

It is possible that, standing alone, this separation of UM/UIM bodily-injury coverage from the coverages purchased for the three vehicles might not be sufficient to plainly notify an insured that only one premium has been charged for UM/UIM bodily-injury coverage. However, appearing two lines below the total-premium line, in all capital letters, is the following statement: "YOUR POLICY INCLUDES UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY COVERAGE WITH LIMITS OF $25,000 PER PERSON/$50,000 PER ACCIDENT. WE CHARGE ONE PREMIUM FOR THIS COVERAGE REGARDLESS OF THE NUMBER OF VEHICLES ON YOUR POLICY. YOUR PREMIUM IS $61.10." This statement makes it clear that only one premium is charged for the UM/UIM coverage, and references the same $61.10 premium that is shown above in the column of charges. The only way to read this statement is as plain notification that only one premium has been charged, as is required by *Rodriguez*. Plaintiffs attempt to argue that the statement is buried at the bottom of the page, and follows a congratulatory statement about how much money Plaintiffs saved on their policy and how they qualified for discounts, and is therefore inconspicuous. However, the Court cannot assume an insured will stop reading the declarations page after being congratulated; the statement is as prominent as every other part of the text, and the mere fact that it is the last portion of text on the declarations page does not render it unnoticeable. It is not buried in a paragraph with other text, but stands alone, and plainly

notifies the insured that only one premium has been charged, regardless of the number of vehicles included in the policy. That is all that *Rodriguez* requires.

The second fact as to which insureds must be plainly notified is that stacking of the UM/UIM coverage will not be allowed. *See Rodriguez*, 879 P.2d at 765. Plaintiffs' main argument that such notice was not provided is based on their contention that the separate page containing the anti-stacking notice should not be considered. The Court has rejected that contention above. As to the notice itself, it plainly states that UM/UIM coverage is different than other coverages that are purchased on a per-vehicle basis, as it is provided on a per-policy basis. [Doc. 21, Exh. B] After further discussion, the notice states that "[t]he multiplication or 'stacking' of limits is not possible under your SAFECO policy. The listed UM/UIM limit applies no matter how many vehicles you own or insure." This is clear notice that stacking of UM/UIM coverage will not be allowed. Plaintiffs contend the notice is ambiguous because it does not differentiate between UM/UIM property- damage coverage and UM/UIM bodily-injury coverage. Since three separate premiums are paid for the property-damage coverage, stacking of that type of UM/UIM coverage would be required under the policy. *See Montaño*, *supra*, 92 P.3d at 1261. According to Plaintiffs, this discrepancy renders the notice ambiguous. The Court agrees with that argument, but only as to the UM/UIM property-damage coverage. As to bodily-injury UM/UIM coverage, the notice is accurate and clearly states that stacking will not be allowed. For purposes of this case, which does not involve UM/UIM property-damage coverage, the ambiguity is irrelevant.

The final piece of required information under *Rodriguez* is that the insured should take into account the anti-stacking nature of the policy, and the policy limits for UM/UIM coverage, in deciding how much coverage to purchase. *See Rodriguez*, 879 P.2d at 765. Again, the separate notice provides this information. Directly following the anti-stacking statement, it informs the insured that the amount of UM/UIM coverage selected by the insured is shown on the declarations page, that the insured should consider the maximum limit the insured feels will provide the coverage

necessary, and that the insured should contact the SAFECO agent if there are any questions about what amount of coverage is appropriate. Again, this is plain notification that the insured should think about the fact that if higher limits of UM/UIM bodily-injury coverage are desired, such extra coverage should be purchased if the insured is so inclined.

**Conclusion**

The Court is under no illusion that the average vehicle-insurance buyer has any idea what uninsured-motorist coverage is, when it might come into play, or especially what "stacking" is. In fact, it is likely that an extremely high percentage of insurance purchasers become aware of the stacking issue only after they are involved in an accident with an uninsured or under-insured motorist, and happen to consult an attorney as a result. This might indicate that no insurance policy language could ever qualify as "plainly notifying" the average insurance purchaser that only one premium has been charged for UM/UIM bodily-injury coverage, and that therefore no multiple coverage exists to stack. However, the New Mexico Supreme Court has rejected an attempt to declare stacking impermissible as a matter of public policy, and has instead declared that under *Rodriguez*, it is possible to provide the requisite plain notice. *See Montaño v. Allstate, supra*, 92 P.3d at 1259. This indicates that the notice required is not fool-proof notice capable of informing every insurance purchaser of the stacking issue. Instead, the required notice must plainly inform any insurance purchaser who attempts to understand the declarations pages and other documents accompanying the policy that he or she is paying only one premium for UM/UIM bodily-injury coverage, and that no stacking of the policy limits will be allowed for such coverage because, since only one premium has been paid, there is nothing to stack.

As discussed above, the declarations pages at issue in this case plainly state that only one premium is being charged for UM/UIM bodily-injury coverage, and there is nothing in the declarations pages that could lead an insured to the opposite conclusion. Furthermore, the notice document enclosed with the declarations pages plainly states that no stacking of policy limits will

be allowed for UM/UIM coverage. Perhaps Defendant could have made these points more clear by putting the information in bold type or by otherwise highlighting it, but nothing in New Mexico case law requires such extra efforts. Defendant has provided Plaintiffs the plain notification required under *Montaño*. For that reason, partial summary judgment will be granted to Defendant.

Dated this 21st day of November, 2011.

*/s/ Bruce D. Black*

**BRUCE D. BLACK**
United States District Judge